UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHAKIRAT O. TOMIWA, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-3229 |
| | § | |
| PHARMEDIUM SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Pending before the Court is a motion for summary judgment (Dkt. No. 22) filed by the defendant, PharMEDium Services, LLC (the "defendant"), for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff, Shakirat O. Tomiwa (the "plaintiff"), filed a response in opposition (Dkt. No. 24) on behalf of herself, her husband, Olufunmilola Tomiwa, and their minor children, L. Tomiwa and H. Tomiwa (collectively the "plaintiffs"), to which the defendant filed a reply (Dkt. No. 25). Having carefully reviewed the parties' submissions, the record, and applicable laws, the Court determines that the defendant's motion for summary judgment should be **GRANTED**.

**II.    PROCEDURAL AND FACTUAL FINDINGS**

The plaintiff, worked as a Licensed Pharmacy Technician ("Technician") at the defendant's sterile compounding pharmacy, in Sugarland, Texas, from December 1, 2014, until October 8, 2015. (Dkt. No. 22, Ex. B, Shakirat O. Tomiwa Depo. at 42). The plaintiff initially filled out an online application to work for the defendant in October 2014. (Dkt. No. 22 at 4). The plaintiff was interviewed by Tonya Johnson-Smallwood, the defendant's Human Resources Manager ("HR Manager") and ultimately given an application for Adecco Medical & Science

Staffing Inc. ("Adecco"). *Id*. On December 1, 2014, Adecco, the defendant's payroll and staffing agency, assigned the plaintiff to work at the defendant's pharmacy. *Id*. Pursuant to the defendant's agreement with Adecco, she would not be eligible for conversion to a full-time employee of the defendant until she had worked 120 work days for Adecco. (Dkt. No. 22, Ex. A, Tonya Smallwood Depo. at 31). The plaintiff's primary duties, as a Technician, were to prepare sterile intravenous admixture compounds, maintain inventory of supplies, assemble productions components, enter data into a computer system, lift up to thirty-five pounds, and stand for extended periods of time. (Dkt. No. 22, Ex. A, Job Description).

In February 2015, the plaintiff discovered she was pregnant. (Dkt. No. 22, Ex. B, S. Tomiwa Depo. at 42). In March 2015, the plaintiff informed her supervisors and the HR Manager that she was pregnant. *Id.* at 43. On March 25, 2015, the plaintiff received an email from the defendant inviting her to complete the defendant's online job application for full-time employment. (Dkt. No. 1, Ex. A, Wil Lawrence Email). On April 9, 2015, the plaintiff was sent an offer letter informing her that in order to be converted from Adecco to a PharMEDium employee she must complete a background check, a drug test, and a physical examination. (Dkt. No. 22, Ex. B, S. Tomiwa Depo. at 52). Once those requirements were met, her conversion would become effective May 26, 2015. (Dkt. No. 22, Ex. A, Smallwood Depo. at 102). On April 13, 2015, the plaintiff executed the offer letter and began the hiring process. (Dkt. No. 22, Ex. B, S. Tomiwa Depo at 53). The plaintiff was converted to a full-time PharMEDium employee on May 26, 2015, and shortly thereafter she was provided with an employee handbook. *Id.* at 66.

On August 26, 2015, the plaintiff became eligible to use her paid time off ("PTO"). (Dkt. No. 22, Ex. A, Smallwood Depo. at 103). However, the plaintiff would not be eligible for short

term disability benefits ("STD") until November 26, 2015.[1] (Dkt. No. 22, Ex. B, S. Tomiwa Depo. at 62). The plaintiff informed the HR Manager that she would not be eligible for STD prior to her scheduled November 15, 2015 delivery date. *Id.* at 44. On August 6, 2015, the HR Manager emailed the defendant's corporate office to inform them of this matter, but was told she would have to terminate the plaintiff if she was not eligible for STD by her delivery date. (Dkt. No. 22, Ex. A, Smallwood Depo. at 100). On August 17, 2015, the HR Manager emailed her supervisor and requested an exception to the corporate policy since the plaintiff's expected delivery date and STD eligibility date were only days apart. *Id.* at 105. On September 14, 2015, the HR Manager's supervisor instructed her to hold the plaintiff's position open while she recovered and that the plaintiff could return to her position with the same pay and with no loss of seniority. *Id.* at 139.

From August 25, 2015, to September 10, 2015, the plaintiff used sixteen (16) hours of PTO and was admitted to the hospital from September 11 – 18, 2015. (Dkt. No. 22, Ex. B, S. Tomiwa Depo. at 79-80). On September 29, 2015, the plaintiff underwent a medical procedure and missed work from October 1 – October 5, 2015. *Id.* at 81-82. On October 7, 2015, the plaintiff's doctor placed her on bedrest for the duration of her pregnancy. (Dkt. No. 1, Ex. B, Notice of Patient Release/Return). The plaintiff was terminated on October 8, 2015. (Dkt. No. 22, Ex. A, Smallwood Depo. at 138-39). On December 11, 2015, the defendant sent the plaintiff and unconditional offer of reinstatement to which the plaintiff declined. (Dkt. No. 22, Ex. B, S. Tomiwa Depo. at 92-93).

On November 2, 2016, the plaintiffs filed their first complaint with this Court against the defendant alleging wrongful termination based on discrimination of sex, pregnancy, and

---

[1] The defendant required new employees to complete six consecutive months or 120 days of employment before they became eligible to receive STD.

disability, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Americans with Disabilities Act of 1990 ("ADA"), Title 42 U.S.C. Section 12101 *et. seq.* (Dkt. No. 1 at 1). Additionally, she alleged that the defendant violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").[2] *Id.* at 2. The defendant now moves for summary judgment on all of the plaintiffs' claims. (Dkt. No. 22).

## III. CONTENTIONS OF THE PARTIES

### A. The Defendant's Contentions

The defendant asserts that it is entitled to summary judgment as a matter of law because the record shows that the plaintiff mischaracterized facts, misstated applicable law, and failed to mitigate her damages. The defendant argues that the plaintiff cannot provide any evidence that her termination resulted from unlawful discrimination based on her sex, pregnancy, or any alleged disability, alleging that the plaintiff was not qualified to perform the duties required for her position, as a Technician. Additionally, the defendant argues that the plaintiff's ADA claim fails because she was unable to perform the essential functions of her job once she was placed on bedrest. Lastly, the defendant contends that it was not only patently unreasonable for the plaintiff to reject its unconditional offer; it was a failure to mitigate her damages. Consequently, the defendant believes that summary judgment is the appropriate remedy to dismiss all the plaintiff's claims in this action.

---

[2] The plaintiffs did not address their COBRA claim in their response to the defendant's motion for summary judgment. The Fifth Circuit has held that "[w]hen evidence exists in the summary judgment record but the non-movant fails . . . to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The Fifth Circuit's general rule is that "arguments not raised before the district court are waived." *Owens v. Specialized Loan Servicing, LLC*, 694 F. App'x 950, 955 (5th Cir. 2017). Consequently, the plaintiff's COBRA claim has been waived.

### B. The Plaintiffs' Contentions

In response, the plaintiffs argue that the defendant and its agents intentionally engaged in unlawful employment practices in violation of Title VII and the ADA based on sex, pregnancy, childbirth, or related medical conditions. The plaintiffs further allege that she was discriminated against in connection with compensation, terms, conditions, and privileges of employment that deprived her of equal employment opportunities that were provided to male employees or non-pregnant employees similarly situated. Finally, she contends that her conversion to full-time permanent employment was delayed so that she would not be eligible for short-term disability. Thus, the plaintiff urges the Court to deny the defendant's motion for summary judgment.

## IV. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the district court of the basis for its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v.*

*Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus,

"[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

V. **LEGAL ANALYSIS AND DISCUSSION**

   A. **No Intentional Discrimination as Defined by Title VII**

Under Title VII, it is "unlawful for an employer 'to fail or refuse to hire or to discharge any individual, or otherwise to discriminate . . . with respect to his compensation, terms, conditions, or privileges of employment . . . race, color, religion, sex, or national origin.'" 42 U.S.C. § 2000e-2(a); *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003). In a case where a plaintiff produces no direct evidence of discriminatory intent, the Court must evaluate proof of circumstantial evidence using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The fact finder decides "whether [a] plaintiff has proven intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12 (1993). To prove a claim of intentional discrimination, "[a]bsent direct evidence of discriminatory intent," (1) the plaintiff must establish a prima facie case of discrimination, (2) the employer must respond with a legitimate, nondiscriminatory reason for its decision, and, (3) if the employer carries the burden of production with an alternative explanation, the plaintiff's inference of discrimination drops out of the picture. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 120 S. Ct. 2097 (2000).

Using the *McDonnell Douglas* framework to establish sex or pregnancy discrimination, a plaintiff must demonstrate that she: "(1) belonged to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of

the protected class or, in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)). The Fifth Circuit has held that an employee who "was considered high-risk" and "house-confined until [the] end of her pregnancy," does not establish a prima facie case of pregnancy discrimination. *Appel v. Inspire Pharm., Inc.*, 428 F. App'x 279, 285 (5th Cir. 2011). The plaintiff did not show she was "qualified for the position given the medical restrictions placed on her by her physician during her pregnancy." *Id.* at 282.

The Pregnancy Discrimination Act ("PDA"), as enacted in 1978, provides that women "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The PDA does not protect pregnant employees who are absent from work "due to pregnancy or to complications of pregnancy," unless absences of non-pregnant employees are comparably overlooked. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002); *see also Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 223 (5th Cir. 2001).

In the case at bar, the record does not show that the plaintiff has "establish[ed] pretext either through evidence of disparate treatment" or by showing that the defendant's proffered explanation was "false or unworthy of credence." *Reeves*, 530 U.S. at 143. Further, there is nothing in the record that proves the defendant intentionally discriminated against the plaintiff. The plaintiff was not qualified for the Technician position at the time of her termination as she was placed on bedrest due to complications from her pregnancy and could not perform the necessary duties of a Technician. Like the plaintiff in *Appel*, who was no longer "qualified for

the position given the medical restrictions placed on her during her pregnancy," this plaintiff could not fulfill the duties of a Technician while on bedrest.

Next, the plaintiff did not provide any compelling evidence to substantiate her allegation that the defendant allowed others to benefit from an exception to its policy. The plaintiff failed to refute the defendant's assertions that essential elements of her job must be performed onsite and that she was not able to perform them while on bedrest. The record shows that the defendant never made any special accommodations in the past for any employees similarly situated or otherwise. Accordingly, the defendant's decision to terminate the plaintiff's employment was based on legitimate business reasons that were non-discriminatory.

**B. Pregnancy is Not a Disability as Defined by the ADA**

The ADA defines a qualified individual as one with a disability who is able, "with or without a reasonable accommodation, to perform the essential functions of their employment position." *See* 42 U.S.C. § 12111(8); *Ingles v. Neiman Marcus Grp.*, 974 F. Supp. 996, 999 (S.D. Tex. 1997). The ADA prohibits discrimination "against a qualified individual with a disability . . . in regard to hiring, advancement, discharge . . . compensation . . . and [other] privileges of employment." *Id*.

Under the ADA, a person is disabled if she "(1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment." 42 U.S.C. § 12102(2). "The court must interpret this definition strictly." *Carmona v. Sw. Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010). "The EEOC's interpretative guidance on Title I of the ADA distinguishes between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments." 29 C.F.R. Pt. 1630, § 1630.2(h), at 401; *Gudenkauf v. Stauffer*

*Communs.*, 922 F. Supp. 465, 473 (D. Kan. 1996). "Absent unusual circumstances, pregnancy and related medical conditions do not constitute a physical impairment," under the ADA. 42 U.S.C. § 12101 et seq. A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method set forth in *McDonnell Douglas*." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

In the present case, the Court finds that the plaintiff has not shown by direct evidence that she meets the standards set forth by the ADA. The Court concludes that the plaintiff's pregnancy is not a "physical impairment." Therefore, the plaintiff is not a qualified individual with a disability. The Court finds that the plaintiff has failed to state a claim under the ADA upon which relief can be granted. Thus, the plaintiff's ADA claims against the defendant are dismissed.

### VI. CONCLUSION

Based on the foregoing discussion and analysis, the defendant's motion for summary judgment is **GRANTED.**

It is so **ORDERED**.

SIGNED on this 20th day of April, 2018.

_____
Kenneth M. Hoyt
United States District Judge